1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA

10   RAY G. BESING,                    Civil No.    13-cv-3159-CAB (DHB)
11                    Plaintiff,
                                       **ORDER GRANTING IN PART**
12          v.                         **AND DENYING IN PART**
                                       **PLAINTIFF'S** *EX PARTE*
13   WILLIAM R. TAYLOR, M.D., et al.,  **DISCOVERY MOTION**
14                    Defendants.      **[ECF No. 46]**
15

16          On December 1, 2014, Plaintiff Ray G. Besing filed a document entitled "Joint
17   Motion on Discovery Dispute: (1) Motion to Waive Local Rule 7.1(d) and (e); (2) Motion
18   to Compel Defendants' Discovery Responses; (3) Motion For Protective Order; (4)
19   Motion for Sanctions."  (ECF No. 46.)  The Court previously resolved some of the
20   disputed issues in its December 2, 2014 Order.  (ECF No. 48.)  Following a December
21   29, 2014 telephonic Discovery Conference, the Court now issues this Order to resolve the
22   remaining issues raised in Plaintiff's motion.  For the reasons set forth herein, Plaintiff's
23   motion is **GRANTED IN PART** and **DENIED IN PART**.

24                          **I.  BACKGROUND**

25          Plaintiff commenced this action on December 24, 2013 when he filed his initial
26   Complaint.  (ECF No. 1.)  Plaintiff filed a First Amended Complaint ("FAC") on June
27   23, 2014.  (ECF No. 36.)  Plaintiff alleges in the FAC that Defendant William R. Taylor,
28   M.D., a neurosurgeon employed by Defendant The Regents of the University of

California, negligently performed a lower back surgery on October 2, 2012.  (*Id.* at ¶¶ 5-8.)

On or about September 10, 2014, Plaintiff served Defendants with Interrogatories and Requests for Production of Documents.  (ECF No. 46 at 15-21.)  Defendants served their responses to Plaintiff's Interrogatories on October 1, 2014.  (ECF No. 52-2 at 11.)  Defendants also contend they served their responses to Plaintiff's Requests for Production of Documents on October 1, 2014 (*id.* at 11:26-12:2), although, as discussed below, the record is not clear as to the date of service.

In any event, Plaintiff sent a letter dated October 24, 2014 to defense counsel.  (ECF No. 46 at 49-53.)  Plaintiff's letter (1) raised numerous issues regarding the adequacy of Defendants' discovery responses, and (2) discussed the scheduling of various depositions.  (*Id.*)  Defense counsel responded to Plaintiff with a letter dated November 4, 2014.  (*Id.* at 54-60.)

Plaintiff filed the instant *ex parte* discovery motion on December 1, 2014.  On December 2, 2014, the Court issued an Order (1) denying part of Plaintiff's motion, namely, Plaintiff's request that various depositions scheduled in December 2014 be stayed, and (2) setting a deadline for Defendants to file a response to the remainder of Plaintiff's motion. (ECF No. 48.)  Defendants filed their opposition to Plaintiff's motion on December 12, 2014.  (ECF No. 52.)  The Court held a telephonic Discovery Conference on December 29, 2014.

## II. DISCUSSION

### A.   <u>Deposition Schedule</u>

Plaintiff originally moved for a protective order staying various depositions scheduled in December 2014 and January 2015.  (ECF No. 46 at 13:9-13.)  The Court denied Plaintiff's motion as to the December 2014 depositions in its December 2, 2014 Order.  (ECF No. 48.)  In their opposition to Plaintiff's *ex parte* discovery motion, Defendants proposed an alternative schedule for the expert depositions scheduled to occur in January 2015.  (ECF No. 52 at 7:9-15.)  Following discussion with Plaintiff and

defense counsel during the December 29, 2014 Discovery Conference, the Court finds that Plaintiff's motion for a protective order staying the January 2015 depositions is moot in that the parties have agreed to the following schedule of depositions:

| Witness | Date | Location |
|---|---|---|
| William Taylor, M.D. | January 5, 2015 | San Diego, CA |
| Jerome Stenejhem, M.D. | January 6, 2015 | San Diego, CA |
| Paul Zimmer | January 7, 2015 | San Diego, CA |
| Brian Bergmark | January 8, 2015 | San Diego, CA |
| Robert Beatty, M.D.[1] | January 20, 2015 | Chicago, IL |
| Stephen Ryu, M.D. | January 22, 2015[2] | Palo Alto, CA |

Accordingly, Plaintiff's motion to stay the January 2015 depositions is **DENIED AS MOOT**.

The parties have also agreed to a second day of the deposition of Dr. Adam Burdick. Dr. Burdick's initial deposition occurred on December 3, 2014. The second session is tentatively scheduled for January 21, 2015 in San Diego and the parties are agreeable to this date. However, Plaintiff is currently coordinating with Dr. Burdick's attorney to finalize the date. The parties shall meet and confer in good faith if Dr. Burdick is not able to appear for the second session of his deposition on January 21, 2015.

/ / /

---

[1] The parties raised an additional issue during the December 29, 2014 Discovery Conference pertaining to the deposition of Plaintiff's medical expert, Dr. Beatty. Specifically, Plaintiff indicated Dr. Beatty requires payment of his expert fees for his deposition in advance to ensure that the parties are serious about taking his deposition. Defendants oppose payment in advance due to the uncertain length of Dr. Beatty's deposition. After discussion with counsel, IT IS HEREBY ORDERED that Defendants shall send Dr. Beatty a check for $3,400, the equivalent of two hours of deposition time, post-dated to January 22, 2015, as a good faith demonstration that Defendants intend to take Dr. Beatty's deposition.

[2] Defense counsel advised during the December 29, 2014 Discovery Conference that he is awaiting final confirmation from Dr. Ryu's office that the January 20, 2015 date is still available. In the event Dr. Ryu is no longer available on this date, the parties are instructed to meet and confer in good faith in an effort to schedule an alternative date that is mutually agreeable to both the parties and Dr. Ryu.

**B.** **Motion to Compel**

    **1.** **Timeliness**

    As an initial matter, Defendants argue Plaintiff's motion to compel further responses to Interrogatories and Requests for Production of Documents is untimely. (*See* ECF No. 52 at 11:16-12:13.)  Section IV of the undersigned's Civil Chambers Rules requires that discovery disputes be brought to the Court's attention by way of a joint statement entitled "Joint Motion for Determination of Discovery Dispute" within 45 days of the date upon which the event giving rise to the dispute occurred.  For written discovery, the event giving rise to the discovery dispute is the service of the response, or the time for such service if no response is given.

    Here, Defendants served their responses to Plaintiff's Interrogatories on October 1, 2014.  (ECF No. 52-2 at 11.)  As a result, Plaintiff was required to file the joint discovery motion no later than November 17, 2104.  However, without seeking from the Court an extension of this deadline Plaintiff filed his *ex parte* discovery motion on December 1, 2014.  Although Plaintiff's motion to compel further responses to Interrogatories fails to satisfy the time requirement set forth in the Court's Civil Chambers Rules and could be denied on that basis alone, the Court will consider Plaintiff's motion to compel further responses to Interrogatories in the interest of resolving the parties' dispute on the merits.

    Defendants contend that they also served their responses to Plaintiff's Requests for Production of Documents on October 1, 2014.  (ECF No. 52 at 11:26-12:2.)  However, Defendants failed to provide a copy of the proof of service of these responses or otherwise establish by admissible evidence the date upon which they served their responses to Plaintiff's Requests for Production of Documents.  Accordingly, the Court cannot conclude that Plaintiff's *ex parte* discovery motion was untimely with respect to Defendants' responses to Plaintiff's Requests for Production of Documents.[3]

---

[3] The Court notes that defense counsel dated Defendants' responses to Plaintiff's Requests for Production of Documents on October 1, 2014.  (ECF No. 46 at 47.)  However, this fact is insufficient to establish that the responses were also served that day.

### 2.     Interrogatories

Plaintiff originally moved in his *ex parte* discovery motion for an order compelling Defendants to provide supplemental responses to Interrogatory Nos. 1-12. (ECF No. 46 at 4:27-10:7.) However, during the December 29, 2014 Discovery Conference, Plaintiff agreed that his motion to compel is now moot with respect to Interrogatory Nos. 1-6 in light of subsequent discovery in this case including Defendants' production of their expert witnesses' reports. Thus, the Court addresses the remaining six Interrogatories.

As an initial matter, however, the Court finds that Defendants did not properly object to Plaintiff's Interrogatories on the basis that Plaintiff has exceeded the maximum number of Interrogatories permitted by Federal Rule of Civil Procedure 33. Rule 33 provides that, "unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." FED. R. CIV. P. 33(a)(1). Here, Plaintiff has served two sets of Interrogatories that include a total of 23 numbered Interrogatories. (ECF No. 46 at 17:8-20:11; ECF No. 52 at 13-15.) However, two of Plaintiff's numbered Interrogatories (*i.e.*, Interrogatory No. 8 of Set One and Interrogatory No. 1 of Set Two) actually contain multiple discreet subparts, thus bringing the total number of Interrogatories, including discrete subparts, to 31, in excess of the 25 permitted under Rule 35. Defendant commenced their response to several of the Interrogatories (*i.e.*, Nos. 1, 3, 5, 6, 10, and 11) with the phrase "Defendants object to this interrogatory and each non-discreet subpart on the grounds that . . . ." (ECF No. 46 at 24-38.) However, although Defendants used the phrase "discreet subparts" in characterizing these Interrogatories, Defendants did not actually assert an objection to any of the Interrogatories on the basis that they exceeded the presumptive limit of 25. Thus, Defendants waived this objection by failing to clearly articulate the objection.

### I.     Interrogatory No. 7

Plaintiff's Interrogatory No. 7 states: "Please state every fact concerning any contractual, partnership, corporate or agency relationship between two or more of the

1   defendants themselves, or themselves of their employees and between any defendant and

2   any treating physician or expert witness." (*Id.* at 19:9-11.)

3        Defendants responded to Interrogatory No. 7 as follows:

4        Defendants object to this interrogatory and each non-discreet subpart
         on the grounds that it is vague, ambiguous and unintelligible, forcing

5        Defendants to speculate as to the meaning of the interrogatory. Defendants
         further object to the interrogatory on the grounds that it seeks premature

6        disclosure of expert witnesses, in contravention of the Amended Scheduling
         Order by the Court as well as the attorney work-product doctrine. The

7        interrogatory is further objected to on the grounds that it is vague,
         ambiguous and unintelligible, forcing Defendants to speculate as to the [sic]

8        whether the term "treating physicians" refers to UCSD physicians as
         opposed to physicians outside of the UCSD system who have provided care

9        and treatment to the Plaintiff in New Mexico and Texas. Without waiving
         said objections, Defendants respond as follows: at all times relevant to

10       Plaintiff's Complaint, the treating physicians at UCSD were employees of
         The Regents of the University of California. To the best of these responding

11       parties' knowledge, there was no contractual, partnership, corporate or
         agency relationship between any of these physicians and any of the

12       Plaintiff's out-of-state treating physicians.

13   (*Id.* at 34:12-26.)

14        Contrary to Defendants' position, Interrogatory No. 7 is not "vague, ambiguous

15   and unintelligible" as to the meaning of the term "treating physicians." Indeed, Plaintiff

16   expressly defined the term in his Interrogatories to mean "any physician or <u>physician's</u>

17   <u>assistant</u> employed by the Regents of the University of California, Thornton Hospital or

18   the University of California at San Diego who treated the Plaintiff at any time." (*Id.* 46

19   at 16:18-20.) Thus, Defendants' response regarding the lack of relationship between the

20   treating physicians affiliated with UCSD and Plaintiff's out-of-state physicians is non-

21   responsive. However, Defendants' response is at least partially responsive in that they

22   indicate that the treating physicians at UCSD were employed by the Regents.

23        Interrogatory No. 7 does not invade the attorney-client privilege or the attorney

24   work product doctrine. Importantly, Plaintiff is not asking Defendants to state the

25   relationship between any treating physician and an expert witness that Defendants intend

26   to call at trial. Such a request would appear to violate the attorney-client privilege

27   because defense counsel may not have decided at the time of their responses which

28   experts to call at trial. Instead, the Interrogatory is not limited to only experts Defendants

intend to call at trial, but, as worded, encompasses any experts Defendants *may* utilize at trial.[4]  The identity of these experts was already disclosed in Defendants' expert witness designations (*see* ECF No. 52-2 at 17-18) and it is not improper for Plaintiff to inquire whether any of these experts have any relationship with Plaintiff's treating physicians, as that term is defined in the Interrogatories.  Although Interrogatory No. 7 may not be a model of clarity, it is not so vague as to permit Defendants to avoid providing a full response.

Accordingly, Defendants shall provide a supplemental response to Interrogatory No. 7 to indicate whether any of the three expert witnesses they have designated in this case have any contractual, partnership, corporate, or agency relationship with the Defendants in this case (*i.e.*, Dr. Taylor and the Regents) or with any of the treating physicians, as that phrase is defined in Plaintiff's Interrogatories.

### ii. Interrogatory No. 8

Plaintiff's Interrogatory No. 8 states: "Please state every fact concerning any communication related to any aspect of this case between the defendants and any treating physician including the date and time of such communication, the means of such communication and the substance of such communication."  (ECF No. 46 at 19:13-15.)

Defendants responded to Interrogatory No. 8 as follows:

> Defendants object to this interrogatory on the grounds that it is vague and ambiguous as to the term "treating physicians" and whether that term is meant to refer to treating physicians at UCSD or treating physicians outside of UCSD.  Defendants further object to the interrogatory on the grounds that it is overly broad and remote, without reasonable limitation in its scope thereby calling for information which is both burdensome, oppressive and harassing to these Defendants as well as calling for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  The interrogatory as phrased is not limited to any particular time frame but would presumably refer to the Plaintiff's entire life span of approximately 80 years.  Defendants further object to the interrogatory on the grounds that it seeks information which would be privileged from disclosure pursuant to the attorney-client privilege in that the physicians who cared for the Plaintiff at UCSD are employees of The Regents of the University of California and are represented by these

---

[4] Additionally, Plaintiff defined the term "expert witness" in his Interrogatories to include "any expert witness the Defendants intend to use, *or may use*, as a testifying witness at deposition or trial."  (ECF No. 46 at 16:21-12 (emphasis added).)

1
2
3
4
5
6
7

parties' attorney of record. If the term "treating physician" refers to physicians outside of UCSD Medical Center, Defendants respond as follows: these Defendants have not had any contact with any non-UCSD treating physician pertaining to the Plaintiff. If the interrogatory were to refer these responding party's attorneys for [sic] record, then the only such treating physician would be Dr. Joshua Brown as his deposition was taken at the Plaintiff's home, and there were communications between Dr. Brown and those who attended the deposition, including the Plaintiff. This information is equally known to the Plaintiff in that he was present during the course of the deposition and has been provided with a copy of the deposition testimony of Dr. Brown. As a consequence, Defendants object to the interrogatory on the grounds that it calls for information which is equally available to the propounding party.

8    (*Id.* at 35:8-36:3.)

9        As noted above, the term "treating physician" encompasses those physicians at

10   UCSD/Thornton Hospital who treated Plaintiff, and expressly does not include Plaintiff's

11   out-of-state physicians. Thus, Defendants' discussion of Dr. Brown is non-responsive.

12   Additionally, Defendants' objection that the Interrogatory encompasses the entirety of

13   Plaintiff's entire life and seeks irrelevant information is unpersuasive. Interrogatory No.

14   8 expressly seeks "communications related to any aspect of this case." It is highly

15   unlikely that any communications that occurred between Defendants and treating

16   physicians at UCSD or Thornton Hospital about the underlying facts of this case delved

17   into aspects of Plaintiff's life that are entirely irrelevant to their treatment of Plaintiff and

18   Plaintiff's claims in this case. Rather, to the extent such communications occurred, they

19   almost certainly addressed facts pertinent to this case. Thus, communications between

20   Defendants and treating physicians, as that term is defined by the Interrogatories, are

21   "reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P.

22   26(b)(1).

23       Finally, Interrogatory No. 8 is not barred by the attorney-client privilege or the

24   attorney work product doctrine. The parties focus their discussion on whether the

25   attorney-client privilege applies to communications between defense counsel and non-

26   party employees of UCSD who treated Plaintiff. (*See id.* at 9:12-16; ECF No. 52 at

27   19:22-27; ECF No. 52-1 at 2:10-17.) However, Interrogatory No. 8 does not seek

28   disclosure of such communications. Rather, Interrogatory No. 8 is clearly aimed at

discovering communications between any Defendant in this case and any treating physician, as that term is defined.[5]   In other words, Interrogatory No. 8 seeks communications between Dr. Taylor and any other treating physician at UCSD/Thornton Hospital who treated Plaintiff, as well as any communications between non-party treating physicians at UCSD/Thornton Hospital who treated Plaintiff.  The Court need not resolve the parties' dispute as to whether the attorney-client privilege protects against disclosure of defense counsel's communications with UCSD treating physicians, because such communications are not encompassed by Interrogatory No. 8, nor will the Court re-write Interrogatory No. 8 to expand its scope to include these communications.  However, the privilege does not extend to communications between, for example, Dr. Taylor and other treating physicians at UCSD or Thornton Hospital made during the course of Plaintiff's treatment.  These are the types of communications sought by Interrogatory No. 8, but Defendants did not include in their response whether any such communications exist.

Accordingly, Defendants must provide a supplemental response identifying whether such communications exist.  If they exist, Defendants must provide Plaintiff with the information concerning each communication that Plaintiff seeks in Interrogatory No. 8.

### iii.   Interrogatory No. 9

Plaintiff's Interrogatory No. 9 states: "Please state every fact concerning any communication related to this case between defendants and any expert witness including the date and time of such communication, the means of such communication and the substance of such communication."  (ECF No. 46 at 19:17-19.)

Defendants responded to Interrogatory No. 9 as follows:

> Defendants object to this interrogatory on the grounds that it seeks premature disclosure of expert witness information in contravention to the Amended Scheduling Order of the Court and the attorney work-product doctrine.  At this point, these Defendants have not decided what expert consultant, if any, they will utilize at the time of trial and will provide the information pursuant to the Order of the Court.  As such, Defendants

---

[5] Plaintiff's definition of "Defendants" as set forth in his Interrogatories excludes defense counsel.  (*See* ECF No. 46 at 17:1-6.)

1    respectfully submit the interrogatory and each subpart is premature.

2    (*Id.* at 36:12-17.)

3    Similar to Interrogatory No. 8, the parties focus their argument regarding

4    Interrogatory No. 9 around whether communications between defense counsel and

5    Defendants' retained experts are privileged. However, Interrogatory No. 9 does not seek

6    such information.[6] Rather, the Interrogatory seeks communications between Defendants

7    and the expert witnesses. Such communications are not protected. *See* FED. R. CIV. P.

8    26(b)(4)(C) advisory committee notes (2010 amendments) ("[I]nquiry about

9    communications the expert had with anyone other than the party's counsel about the

10   opinions expressed is unaffected by [Rule 26(b)(4)(C]."). Thus, to the extent Defendants

11   communicated with their retained experts, a further response to Interrogatory No. 9 is

12   required.

13                    *iv.    Interrogatory Nos. 10 and 11*

14   Plaintiff's Interrogatory No. 10 states: "Please state every fact concerning the

15   percentage of lumbar surgeries you performed in which a thecal sac tear or cut occurred

16   and the resulting actual or claimed physical injury or injuries to such patients suffering

17   a thecal sac tear." (*Id.* at 19:21-23.) Similarly, Plaintiff's Interrogatory No. 11 states:

18   "Please state the percentage of cases in a year, for the past ten years, which you

19   performed a re-operation or other procedure after a thecal sac tear and repair, in which

20   you attempted to relieve nerve or nerve root compression caused by your thecal sac

21   repair." (*Id.* at 20:1-3.)

22   / / /

23   _____

24   [6] Had Plaintiff sought communications between defense counsel and Defendants'
     expert witnesses, the privilege would be governed by Federal Rule of Civil Procedure

25   26(b)(4)(C), which "protect[s] communications between [a] party's attorney and any
     witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the

26   communications, except to the extent that the communications" fall within three specific
     exceptions: (I) communications relating to the expert's compensation; (ii)

27   communications identifying facts or data provided by the attorney to the expert to be used
     in formulating the expert's opinions; and (iii) communications identifying assumptions

28   provided by the attorney to the expert to rely on in forming the expert's opinions. FED.
     R. CIV. P. 26(b)(4)(C)(I)-(iii). As stated above, however, Interrogatory No. 9 does not
     seek such information.

Defendants responded to Interrogatory No. 10 as follows:

> Defendants object to this interrogatory and each non-discreet subpart on the grounds that it is overly broad and remote, without reasonable limitation in its scope, thereby calling for information which is both burdensome, oppressive and harassing to these Defendants, as well as calling for information which is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. It should be noted that the interrogatory is not specifically limited to Dr. Taylor, but presumably would include The Regents of the University of California and all of its orthopedic and neurosurgical lumbar surgeries. Without waiving these objections and limiting their response to Dr. Taylor, Defendants respond as follows: Unknown. It should be noted that no such information is compiled and there would be no readily available way to go back and make this determination. The interrogatory is not limited as to time and as such, would be burdensome and oppressive. Furthermore, since there is no readily available way of compiling this information, the only option for The Regents would be to review every patient's medical record from the time Dr. Taylor began rendering medical care to the present to determine if such a complication occurred. This would involve two separate hospitals and thousands of outpatient visits over a span of many years and would involve thousands of patients. Not only would this be burdensome, oppressive and harassing to these Defendants, but it would violate each patient's right of privacy as it would require someone to review each of their medical records. Defendants respectfully submit that the burden and expense of such an undertaking would substantially outweigh any probative value particularly in this case, when it is anticipated that there will be no dispute that this type of injury can occur without a breach in the standard of care. The issue in this case will be was it a breach in the standard of care in this particular case.

(*Id.* at 36:25-37:20.)

Defendants' response to Interrogatory No. 11 is identical with the sole exception that Defendants' "burdensome and oppressive" objection to Interrogatory No. 11 is based on Interrogatory No. 11 involving a 10-year time period whereas Interrogatory No. 10 is not limited as to time. (*Id.* at 38:2-25.)

Upon review of Interrogatory Nos. 10 and 11 and Defendants' responses thereto, the Court finds it appropriate to require a supplemental response from Dr. Taylor. The information sought is relevant to Plaintiff's claims in this case. While cognizant of the burden that Defendants would incur if forced to review each patient file, the Court is not convinced that Dr. Taylor has no other way to respond to these Interrogatories. Rather, Dr. Taylor is expected to provide a good faith estimate of the percentages requested. Such estimates by doctors are not uncommon in medical malpractice cases, and the Court

believes Dr. Taylor could, with some thought on the matter, arrive at estimated figures based on his knowledge of his practice. However, the Court will not require Dr. Taylor or The Regents to review patient records to obtain this information. Additionally, the Court will not require Dr. Taylor to identify each and every injury sustained by a patient under his care who suffered a thecal sac tear, but he is required to provide a summary of the type, nature, and extent of injuries his patients have experienced. Dr. Taylor's responses to these Interrogatories shall be limited to the last 10 years, and the responses need only address patients seen by Dr. Taylor. The Court believes this compromise will afford Plaintiff some relevant information while avoiding the imposition of significant burden on Defendants and potential violation of patients' privacy rights.

### v.   Interrogatory No. 12

Plaintiff's Interrogatory No. 12 states: "Please state every fact related to or concerning your decision not to re-operate on Plaintiff after the October 2, 2012 surgery to relieve the pressure on Plaintiff's nerve roots caused by the thecal sac repair as indicated by the Lumbar CT scan conducted at Thornton Hospital after the October 2, 2012 surgery on Plaintiff. This interrogatory is to be answered in detail regardless of the defense that the decision not to re-operate was plaintiff's - due to plaintiff's denial of such defense." (*Id.* at 20:5-11.)

Defendants responded to Interrogatory No. 12 as follows:

> Ultimately, the decision to re-operate was made by the Plaintiff, as he elected not to proceed with the surgery. The Plaintiff was advised that his post-operative lower extremity weakness could be due to either a neurapraxia or thecal sac compression from the fibrin glue deposit. The patient was advised regarding the possible causes for the post-operative weakness in the lower extremity and options for treatment which included surgical decompression or waiting to see if the condition got better, along with the risks and benefits to either option. The decision to undergo surgery was the Plaintiff's and he ultimately elected not to undergo surgery during the time of his care and treatment at UCSD.

(*Id.* at 39:10-18.)

Plaintiff contends that although Defendants admit that Plaintiff suffered "post-operative weakness in the lower extremity," "[t]he remainder of the response is a false

statement in the form of a denial of Defendants that they cancelled a second, reparative operation on Plaintiff, which the Defendants recommended to Plaintiff and which Plaintiff accepted." (*Id.* at 10:3-7.)

As an initial matter, Plaintiff failed to make a good faith effort to meet and confer with defense counsel as to the adequacy of Defendants' response to Interrogatory No. 12. Indeed, Plaintiff's October 24, 2014 meet and confer letter makes no mention of Interrogatory No. 12. (*See id.* at 49-53.) A party moving to compel discovery "*must* include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1) (emphasis added); *see also* Civ. L.R. 26.1(a) ("The court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues."). Plaintiff's failure to meet and confer concerning Interrogatory No. 12 is grounds for denial of his motion to compel a further response.

Additionally, even had Plaintiff attempted to meet and confer, the Court would nevertheless deny the motion to compel a further response because Plaintiff's argument is essentially that he disagrees with Defendants' version of the facts regarding who made the decision not to perform a second surgery. This factual dispute is not properly resolved by way of a motion to compel.

In sum, Plaintiff's motion to compel a further response to Interrogatory No. 12 is **DENIED** due to (1) Plaintiff's failure to meet and confer on this issue and (2) the fact that Defendants's response is adequate even if Plaintiff disagrees with Defendants' response.

### 3. Requests for Production of Documents

Plaintiff originally moved in his *ex parte* discovery motion for an order compelling Defendants to provide supplemental responses to Requests for Production of Documents

/ / /

/ / /

1   Nos. 1-5.[7]  (ECF No. 46 at 10:11-11:10.)  However, during the December 29, 2014

2   Discovery Conference Plaintiff agreed that his motion to compel is now moot with

3   respect to Request Nos. 2 and 4.  Thus, the Court addresses the remaining four Requests.

4   　　　As an initial matter, however, the Court finds that Plaintiff has failed to

5   demonstrate that he adequately met and conferred regarding Defendants' responses to any

6   of the Requests.  Indeed, Plaintiff's October 24, 2014 meet and confer letter to defense

7   counsel merely alleges that Defendants "completely failed to respond to Plaintiff's

8   Request for Production of Documents Set NO. 2.  Plaintiff again requests full responses."

9   (*Id.* at 52.)  This claim is not supported by the record, nor does it constitute a proper meet

10  and confer.  Defendants *did* respond to the Requests.  (*See id.* at 42-47.)  Although

11  Plaintiff is not satisfied with Defendants' responses, and although Defendants did not

12  produce any documents in connection with their responses, it is disingenuous to claim

13  that Defendants did not respond.  Moreover, it is insufficient for Plaintiff to ignore in his

14  meet and confer effort the fact that Defendants served responses.  Plaintiff should have

15  addressed Defendants' responses.[8]

16  / / /

17  / / /

18

19  　　　[7] Plaintiff's *ex parte* discovery motion is actually not entirely clear as to which
20  Requests he seeks to compel a further response.  Plaintiff claims in a conclusory fashion
    "that Defendants have not produced one page of any documents in response to the
21  September 34 Request for Production of Documents, except to deliver to Plaintiff, on
    November 25, the Cvs of Defendants' expert witnesses."  (ECF No. 46 at 10:13-16.)
22  Plaintiff then goes on to specifically address only Request Nos. 5 and 6.  (*Id.* at 10:23-
    11:10.)  Although the Court could reasonably interpret Plaintiff's discovery motion to
23  only encompass Request Nos. 5-6, in an abundance of caution, the Court will interpret
    Plaintiff's argument as an effort to compel production in response to all six Requests.

24  　　　[8] The Court is generously allowing Plaintiff's November 24, 2014 letter to
25  constitute a proper meet and confer.  Pursuant to Section IV(A) of the undersigned's Civil
    Chambers Rules, the parties were required to meet and confer by telephone.  "Under no
26  circumstances may counsel satisfy the 'meet and confer' obligation by written
    correspondence."  Although Plaintiff alleges in his discovery motion that the parties
27  "engaged in telephone calls and emails conferring about ways to resolve the failure of
    Defendants to comply with this discovery" (ECF No. 46 at 3:14-17), there is no
28  indication in the record that Plaintiff attempted to meet and confer by telephone
    concerning any matters that were not raised in his October 24, 2014 meet and confer
    letter.

13cv3159-CAB (DHB)

*I.*     *Request No. 1*

Plaintiff's Request No. 1 seeks production of "[d]ocuments which any defendant, treating physician or expert witness has/have received from any medical malpractice insurance company or agent, or the University of California regarding dealing with medical malpractice cases, testifying at depositions or testifying in court." (*Id.* at 20:18-20.)

Defendants responded to Request No. 1 as follows:

> Defendants object to this request on the ground that it is overly broad and remote, without reasonable limitation in its scope thereby calling for information which would be privileged from disclosure pursuant to the attorney-client privilege as well as being violative of the attorney work-product privilege. It should be noted that the request as phrased is not limited to this case, but rather, includes both prior and subsequent lawsuits over an extended period of time. Excluding other lawsuits, these Defendants respond as follows: Defendants are not aware of any documents responsive to this request. Defendants further object to the Request for Production on the grounds that it seeks premature disclosure of expert witness information in contravention to the Amended Scheduling Order of the Court as well as the attorney work-product doctrine.

(*Id.* at 44:2-11.)

Plaintiff concedes in his *ex parte* discovery motion that "the Requests are clearly limited to this lawsuit." (*Id.* at 10:16-17.) By limiting Request No. 1 in this fashion, Defendants' response (*i.e.*, "Defendants are not aware of any documents responsive to this request.") is complete and no further response or document production is warranted.

*ii.*     *Request No. 3*

Plaintiff's Request No. 3 seeks production of "[d]ocuments supporting, or contrary to, each and every expert witness' and/or treating physicians' testimony regarding Defendants' response provided to Plaintiff Ray G. Besing's Special Interrogatory Set No. Two (2) Interrogatory No. 6 above)." (*Id.* at 21:1-3.)

Defendants responded to Request No. 3 as follows:

> Defendants object to this request on the grounds that it seeks premature disclosure of expert witness information in violation of the Court's Amended Scheduling Order and the attorney work-product doctrine. Defendants did however respond to portions of Interrogatory No. 6 of the Second Set of Special Interrogatories and the documents in support of that

response consist of the Plaintiff's medical records from UCSD Medical Center. As noted within Paragraph 2 of the instructions to this Discovery, the requested documents "do not include any medical record previously provided to the Plaintiff by Defendants". As such, no further production of documents is provided at this time.

(*Id.* at 45:7-15.)

The Court agrees with Defendants in that Request No. 3 prematurely seeks disclosure of expert witness information. Indeed, at the time of Defendants' response to this Request, Defendants' expert witnesses had neither been deposed nor provided their expert witness reports which were not due until December 1, 2014. As phrased, the Request required Defendants to speculate as to what their experts might say in their respective depositions and reports, and for this reason the Request is improper. As to the portion of the Request seeking documents supporting or contrary to treating physicians' testimony, Defendants indicate that documents supporting or contrary to their response to Interrogatory No. 6 are limited to Plaintiff's medical records which Plaintiff already possesses. Thus, no further response or production is warranted.

### iii.    Request No. 5

Plaintiff's Request No. 5 seeks production of "[d]ocuments related to Plaintiff's Consent to a re-operation on his lumbar region on or about October 6, 2012." (*Id.* at 21:8-9.)

Defendants responded to Request No. 5 as follows:

Defendants object to this request on the grounds that it is vague, ambiguous and unintelligible, forcing Defendants to speculate as to the meaning of the term "Plaintiff's Consent". The ambiguity arises out of the fact that the Plaintiff did not consent to performance of a second surgery. In an effort however to respond to the request, Defendant identified documents related to whether the Plaintiff would consent to a re-operation as set forth within the request. The only documents responsive to this request consist of the physician's progress notes contained within the Plaintiff's medical records from UCSD Medical Center. As noted previously, Item 2 of the introductory statement to Plaintiff's discovery specifically indicates that the requested documents "do not include any medical record previously provided to the Plaintiff by Defendants". In this case, the Plaintiff has been provided on two separate occasions with copies of his medical records from UCSD Medical Center. As such, no production of documents is provided at this time, as these Defendants are unaware of any documents responsive to this request that are not contained within the Plaintiff's medical records.

(*Id.* at 46:6-20.)

While the Court will not at this time decide the parties' dispute regarding whether Plaintiff consented to undergoing a re-operation, the Court finds that Defendants' response to this Request is proper.  Plaintiff claims that Dr. Taylor made an entry in a medical record indicating that informed consent was obtained but that Defendants have not produced the informed consent document. (*Id.* at 10:26-29.)  However, Defendants plainly state in their response, as well as in their opposition to Plaintiff's discovery motion, that the only documents responsive to this Request consist of progress notes.  In other words, Defendants do not possess any further documentation, such as a completed informed consent form, that is responsive to this Request.  Accordingly, the Court finds Defendants' response is complete and no further response or production is warranted.

iv.     *Request No. 6*

Plaintiff's Request No. 6 seeks production of "[d]ocuments related to the decision to cancel the re-operation on or about October 7, 2012 including notes of any meetings between defendants or any other treating physician on that subject or written evidence of the decision to terminate the re-operation on or about October 7, 2012." (*Id.* at 21:11-14.)

Defendants responded to Request No. 6 as follows:

> Defendants object to this request on the grounds that it is vague, ambiguous and unintelligible, forcing Defendants to speculate as to the meaning of the term "related to the decision to cancel the re-operation[.]" As noted previously, the Plaintiff never consented to the performance of the procedure. Without waiving said objection however, Defendants refer to the Plaintiff's medical records from UCSD as consisting of documents which pertain the Plaintiff's decision to not go forward with the surgery. As noted previously, Item 2 of the Introductory Statements to the Plaintiff's Discovery, requested documents "do not include any medical record previously provided to the Plaintiff by Defendants". As a consequence, no documents are provided in response to this request. Defendants do however indicate that the only documents they are aware of responsive to the request as noted herein are the physician's progress notes contained within the Plaintiff's medical records from UCSD Medical Center. Copies of these records have been provided on two separate occasions to the Plaintiff.

(*Id.* at 47:2-15.)

Again, the Court does not at this time resolve the parties' factual dispute as to whether Plaintiff consented to the performance of a second surgery.  That being said, the

Court recognizes that Defendants do not believe Plaintiff ever consented to a re-operation.  Given that position, Defendants' response to Request No. 6 is sufficient.  Moreover, Defendants referred Plaintiff to his medical records, which he already possesses, as being the only documents Defendants are aware of that pertain to the re-operation.  Again, in the context of a discovery motion, the Court cannot resolve the parties' factual dispute about whether Plaintiff consented, whether Plaintiff decided not to go forward with the surgery, and whether the decision not to re-operate was made by Dr. Taylor or others at Thornton Hospital.  The Court cannot compel Defendants to produce documents that they do not possess.

**C.    Sanctions**

Finally, Plaintiff seeks an award of "reasonable and necessary travel expenses, which Plaintiff estimates to be above $9,000.00," due to "the large expenses involved in traveling from New Mexico to California, lodging, commercial meals, cab fares, the fees charged by court reporters and the enormous fees charged by expert witnesses." (*Id.* at 13:1-4.)  Defendants oppose Plaintiff's request for sanctions.  (ECF No. 52 at 16-10:6.)

Although Plaintiff's motion does not expressly identify any legal authority permitting such an award of sanctions, the Court notes that Plaintiff brought his motion under Federal Rules of Civil Procedure 26 and 37.  (ECF No. 46 at 1:30-31.)  Although Rule 37 permits the Court to award sanctions where a motion to compel discovery is granted, the sanctions are limited to "the movant's reasonable expenses incurred in making the motion, including attorney's fees."  FED. R. CIV. P. 37(a)(5)(A).  Here, Plaintiff does not seek to recover any expenses incurred in bringing his *ex parte* discovery motion.  Moreover, in light of Plaintiff's status as a *pro se* litigant, it is likely that any expenses incurred in bringing this motion are negligible.  Instead, Plaintiff seeks to force Defendants to pay for the cost of Plaintiff's expenses incurred, or to be incurred, in taking depositions in this case.  Specifically, Plaintiff seeks an award of sanctions to cover "travel expenses," including airfare, lodging, meals, and cab fares, as well as the fees charged by court reports and expert witnesses.  Plaintiff has cited no authority, and

the Court is aware of none, that would permit such an award.  Therefore, Plaintiff's motion for sanctions is **DENIED**.

### III.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED:

1.    Plaintiff's motion for a protective order staying the January 2015 depositions is **DENIED AS MOOT**.

2.    On or before **January 9, 2015**, Defendants shall provide Dr. Robert Beatty with a check in the amount of $3,400, post-dated to January 22, 2015.

3.    Plaintiff's motion to compel further responses to Interrogatory Nos. 1-6 and Request for Production of Documents Nos. 2 and 4 is **DENIED AS MOOT**.

4.    On or before **January 16, 2015**, Defendants shall serve supplemental responses to Interrogatory Nos. 7-11 in accordance with the discussion herein.

5.    Plaintiff's motion to compel further responses to Interrogatory No. 12 and Request for Production of Documents Nos. 1, 3, 5, and 6 is **DENIED**.

6.    Plaintiff's motion for sanction is **DENIED**.

**IT IS SO ORDERED.**

DATED:  December 31, 2014

DAVID H. BARTICK
United States Magistrate Judge